Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# OPINION

No. 04-09-00538-CV

**ACCI FORWARDING, INC.**, Alejandro De La Miyar, and Irma Maldonado Rullan,
Appellants

v.

**GONZALEZ WAREHOUSE PARTNERSHIP**,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2005-CVF-000184-D4
Honorable Oscar J. Hale, Jr., Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Phylis J. Speedlin, Justice
                Rebecca Simmons, Justice

Delivered and Filed:  February 16, 2011

AFFIRMED

ACCI Forwarding, Inc., Alejandro De La Miyar, and Irma Maldonado Rullan, (collectively, "ACCI,") appeal from a $55,800.00 judgment against them. ACCI was sued by Gonzalez Warehouse Partnership ("GWP"), and a jury found in favor of GWP on its claims for trespass and nuisance. The trial court rendered judgment on the verdict. On appeal, ACCI argues (1) the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict ("JNOV") because GWP's claims were barred by limitations; (2) the

evidence was legally insufficient to support the jury's findings; (3) the trial court erred in imputing liability to De La Miyar and Rullan, who are officers and directors of ACCI; (4) the trial court erred in characterizing two orders as "a Rule 316 judgment *nunc pro tunc*"; and (5) the trial court erred in denying ACCI's motion for JNOV because GWP's claim was not cognizable under a nuisance theory. We affirm the trial court's judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

On February 7, 2005, GWP filed suit against ACCI to recover the costs of removing oilfield chemicals that ACCI placed in GWP's warehouse and then failed to remove. ACCI answered the suit. The case went to trial before a jury.

According to the trial evidence, one of GWP's managers gave ACCI permission to store chemicals in GWP's warehouse in Laredo, Texas in July 2000. The chemicals, which were in both powder and liquid form, were initially placed in GWP's warehouse. It was agreed that the storage of the chemicals in GWP's warehouse was to be short-term, lasting for only about three weeks. When thirteen weeks passed and the chemicals were still not removed, GWP sent a letter to ACCI, asking it to remove the chemicals from GWP's warehouse. ACCI never removed the chemicals.

By October 2000, GWP needed to make room in its warehouse for other products. GWP moved the chemicals from the warehouse to trailers located on its property near the warehouse. Eventually, the chemicals were removed from the trailers, placed on the ground outside the warehouse, and covered with tarps. GWP consulted government officials about the proper disposal of the chemicals. GWP learned from these officials that the chemicals could not simply be deposited in a landfill, and required specialized disposal by professionals.

In 2003, GWP found a buyer for its warehouse and entered into a sales contract. Removal of the chemicals was a condition of the sales contract. GWP paid one company $45,000.00 to remove the powder chemicals. GWP paid another company $10,800.00 to remove the liquid chemicals. Removal of the chemicals took place in late September 2003 and in early October 2003.

After GWP presented its evidence, ACCI moved for directed verdict based on the statute of limitations. The trial court denied the motion. The case was submitted to the jury on theories of nuisance and trespass. GWP asked to be compensated for the cost of removing and disposing of the chemicals. GWP did not ask to be compensated for the cost of storing the chemicals.

The jury found in favor of GWP on both its nuisance and trespass theories. On May 27, 2009, the trial court rendered judgment on the verdict, awarding GWP $55,800.00 in actual damages plus interest.

On June 26, 2009, ACCI filed a timely motion for new trial, thereby extending the trial court's plenary power. The motion for new trial was overruled by operation of law on August 10, 2009, and the trial court's plenary power was set to expire on September 9, 2009.

Nevertheless, on August 3, 2009, before the trial court's plenary power expired, ACCI filed another motion entitled "Defendant's Motion to Modify Judgment, Motion for JNOV, and Supplemental Motion for New Trial." In this motion, ACCI argued GWP's claims were barred by limitations and GWP's nuisance theory was not a cognizable claim. This motion extended the trial court's plenary power.

On August 10, 2009, the trial court held a hearing on the motion, but made no immediate ruling.

On September 1, 2009, the trial court signed two additional judgments. One judgment, entitled, "Take Nothing Judgment," granted the motion for JNOV and rendered a take-nothing judgment as to all three defendants. The other judgment, entitled "Amended Final Judgment," rendered a take-nothing judgment as to De La Miyar and Mullan, but rendered judgment against ACCI.[1]

On September 22, 2009, while the trial court still had plenary power, an order vacating the September 1, 2009, judgments was signed. On October 1, 2009, GWP filed a motion to vacate the September 1, 2009, judgments. On November 9, 2009, the trial court signed another order vacating the September 1, 2009, judgments. The November 9, 2009, order granted the same relief as the September 22, 2009, order. Neither order, however, expressly reinstated the May 27, 2009, judgment.

ACCI appealed. On our own motion, we issued an order questioning whether a final, appealable judgment existed in this case. In response, the trial court signed an order clarifying its intention to reinstate the May 27, 2009, judgment.

### EFFECT OF FORFEITED CORPORATE CHARTER

As a preliminary matter, GWP argues we must summarily affirm the judgment in its favor because ACCI could not have asserted any defenses below in light of section 171.252 of the Texas Tax Code. Specifically, GWP presents the following issue in its brief, "Did Appellant ACCI Forwarding, Inc. have the right to present any defenses, including the defense of limitations, at trial, being that its corporate charter was forfeited and never reinstated?" We note this argument applies only to ACCI, not to De La Miyar and Rullan.

---

[1]The September 1, 2009, judgments were not signed by the sitting judge of the 406th Judicial District Court, who presided over the trial and the hearing on the motion for JNOV, but were signed by a visiting judge.

Section 171.252 of the Texas Tax Code provides,

If the corporate privileges of a corporation are forfeited under this subchapter:

(1) the corporation shall be denied the right to sue or defend in a court of this state; and

(2) each director or officer of the corporation is liable for a debt of the corporation as provided by Section 171.255 of this code.

TEX. TAX CODE ANN. § 171.252 (West 2008).

Here, the record shows the parties stipulated that ACCI forfeited its corporate charter and corporate privileges on February 2, 1993. The parties further stipulated that as of the date of trial, May 19, 2009, ACCI's corporate charter had not been reinstated because it had failed to satisfy its franchise tax obligation. GWP filed a motion to strike ACCI's defenses, arguing ACCI was prohibited from defending suit under section 171.252 of the Texas Tax Code because it failed to pay its franchise taxes. *See id.* § 171.251-.252. However, the record does not show GWP presented its motion to strike to the trial court or that it obtained a ruling on its motion. We, therefore, conclude GWP has waived its argument on appeal by not first presenting it to the trial court. *See* TEX. R. APP. P. 33.1(a) (specifying the prerequisites to presenting a complaint for appellate review).

## LIMITATIONS

In its first issue, ACCI argues the trial court erred in denying its motions for directed verdict and JNOV because GWP's claims were barred by limitations as a matter of law. At the close of the evidence, ACCI moved for a directed verdict based on limitations. ACCI argued that any cause of action accrued in October of 2000, when ACCI was asked to remove the chemicals from GWP's warehouse and failed to do so. ACCI contended GWP's claims were barred by the two-year statute of limitations because GWP did not file suit until February of 2005. In response,

GWP argued that it pleaded and proved a temporary nuisance and a continuing trespass, and therefore, its claims were not barred by limitations. The trial court denied ACCI's motion for directed verdict.

### 1. GWP's Waiver Arguments

GWP argues ACCI waived its limitations complaint by failing to present this issue to the trial court. In support of this argument, GWP asserts ACCI's motion for JNOV was untimely, and therefore, failed to preserve error. We disagree. Regardless of the timeliness of the motion for JNOV, ACCI's motion for directed verdict preserved its limitations complaint for appellate review.

Next, GWP argues ACCI waived its limitations complaint because the issue was not submitted to the jury, and GWP did not object to its omission from the jury charge. Again, we disagree. Accrual of limitations is a question of law for the court. *Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 274-75 (Tex. 2004); *Graham v. Pirkey*, 212 S.W.3d 507, 511 (Tex. App.—Austin 2006, no pet.). The limitations issue presented in this case, which involved undisputed evidence, presented a legal question for the court. *See Schneider*, 147 S.W.3d at 274-75 (noting that although jurors decide material factual disputes about frequency, duration, and extent of nuisance conditions, accrual of limitations is a question of law for the court). We conclude ACCI has preserved its limitations complaint for appellate review.

### 2. Applicable Law

A directed verdict for the defendant is proper when the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *Prudential Ins. Co. of Am. v. Fin. Review Serv., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

The limitations period for bringing trespass and nuisance actions is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West Supp. 2009); *Schneider*, 147 S.W.3d at 270; *Fallis v. River Mountain Ranch Prop. Owners Ass'n, Inc.*, No. 04-09-00256-CV, 2010 WL 2679997, at *6 (Tex. App.—San Antonio, July 7, 2010, no pet.) (mem. op.). Generally, limitations periods begin to run when a claim accrues or when damages are sustained. *Upjohn Co. v. Freeman*, 885 S.W.2d. 538, 541 (Tex. App.—Dallas 1994, writ denied) (citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 829 (Tex. 1990)).

The determination of the accrual date for damage to real property depends on the characterization of the injury as permanent or temporary. *Schneider*, 147 S.W.3d at 270; *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex. 1984). The distinction between permanent and temporary injuries to land has been applied to both nuisance and trespass claims. *See Schneider*, 147 S.W.3d at 274-75 (applying temporary/permanent injury distinction to nuisance claim); *Fallis*, 2010 WL 2679997, at *6 (applying temporary/permanent injury distinction to trespass claim). A permanent trespass claim accrues upon discovery of the injury. *Fallis*, 2010 WL 2679997, at *6; *Waddy v. City of Houston*, 834 S.W.2d 97, 102 (Tex. App.—Houston [1st Dist.] 1992, writ denied). "A permanent nuisance claim accrues when injury *first* occurs or is discovered; a temporary nuisance claim accrues *anew* upon each injury." *Schneider*, 147 S.W.3d at 270. While a cause of action for permanent injury to land must be brought within two years, damages for temporary injury to land may be recovered for the two years prior to filing suit. *Bayouth*, 671 S.W.2d at 868.

Furthermore, in a continuing tort case, the wrongful conduct continues to effect additional injury to the plaintiff until that conduct stops. *Fallis*, 2010 WL 2679997, at *6; *Krohn v. Marcus Cable Assocs., L.P.*, 201 S.W.3d 876, 880 (Tex. App.—Waco 2006, pet. denied);

*Upjohn*, 885 S.W.2d. at 541 (citing *Arquette v. Hancock*, 656 S.W.2d 627, 629 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.)). As a result, an action may not be barred by limitations if the wrongful conduct constitutes a continuing tort. *Fallis*, 2010 WL 2679997, at *6. Under the continuing tort doctrine, a cause of action for trespass accrues anew with each successive trespass. *See Creswell Ranch & Cattle Co. v. Scoggins*, 39 S.W. 612, 614 (Tex. Civ. App.—Fort Worth 1897, no writ) (concluding that cattle trespassing and grazing on land over a period of years is an ongoing trespass, not one that permanently destroyed or damaged the land). A continuing trespass is considered ongoing, and a cause of action does not accrue until the defendant's tortious conduct ceases. *Fallis*, 2010 WL 267999, at *6.

### 3. Discussion

In moving for directed verdict ACCI argued, as it argues now on appeal, that GWP's claims were barred by limitations because the injury to GWP's land was permanent as a matter of law. ACCI argues the record establishes a permanent injury to the property because there was "substantial interference with the property as soon as the offending chemicals were present there without GWP's consent." ACCI further argues the record establishes a permanent injury to the property because there was nothing irregular or intermittent about the presence of the chemicals on GWP's property. ACCI states, the chemicals "were placed there in July 2000, and GWP did not want them there as of October 2000." According to ACCI, GWP's claims accrued "as soon as GWP terminated [] permission to keep the chemicals on [its] property." ACCI further argues that all the evidence in this case shows this occurred by October 2000, when GWP sent ACCI a letter asking it to remove the chemicals.[2]

---

[2] ACCI also points to the parties' stipulation that, "The *first occurrence* of any alleged continuous and ongoing trespass and any alleged continuous and ongoing nuisance occurred prior to January 1st, 2003." (emphasis added). This stipulation applies to GWP's continuing tort theory, which has not been challenged in the context of this appeal.

We find ACCI's arguments unconvincing. The record establishes that the injury in this case was not permanent, but temporary. "[A] nuisance is temporary if it is of limited duration." *Schneider*, 147 S.W.3d at 272. "A nuisance is also temporary if it is occasional, intermittent or recurrent, or sporadic and contingent upon some irregular force such as rain." *Id*. (internal quotations omitted). The ability to terminate tortious conduct is a characteristic of a temporary injury to land. *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 443 n. 8 (Tex. App.—Fort Worth 1997, pet. denied). On the other hand, "a permanent nuisance is one that involves an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely." *Schneider*, 147 S.W.3d at 272 (internal citations omitted). In addition, "a permanent nuisance may be established by showing either the plaintiff's injuries or the defendant's operations are permanent." *Id*. at 283.

Here, the undisputed evidence showed the injury involved the placement of portable, removable chemicals in a warehouse, and later, on the land itself. Thus, the source of the injury was not permanent, and the injury was of limited duration. All the evidence showed the storage of the chemicals did not cause any long-term damage to the land. Once the chemicals were removed, subsequent testing showed there was no chemical residue. And, although the evidence showed that removal of the chemicals was a condition of the sale of the property, once the chemicals were removed, GWP was able to sell the property. Thus, as to the consequences that flowed from the injury, there was no permanent damage.

ACCI relies on *Hues v. Warren Petroleum Co.*, , to support its argument that the injury here was permanent; however, this reliance is misplaced. 814 S.W.2d 526, 528-29 (Tex. App.—Houston [14th Dist.] 1991, writ denied). In *Hues*, landowners sued in 1985 for negligence, trespass, nuisance, misrepresentation, and inverse condemnation because of a gas leak that

occurred in 1980 and disposal of brine that began in 1956. *Id*. at 529. In their pleadings, the landowners alleged the injury to their land was indefinite, continued, and permanent. *Id*. After reviewing the evidence, the appellate court determined the alleged injury was in fact permanent, and the claims were barred by the two-year statute of limitations. *Id*. Unlike the plaintiff in *Hues*, however, GWP alleged the injury to their land was temporary. And, as previously discussed, our review of the undisputed evidence confirms that the injury here was in fact temporary.

ACCI also points out that the Texas Supreme Court disapproved of *Bayouth* in *Schneider*. 147 S.W.3d at 281. However, *Schneider*'s disapproval of *Bayouth* was on a ground that does not affect its application to the present case. In *Bayouth*, the Texas Supreme Court held that an affidavit asserting that damages to land were sporadic and intermittent created a fact question as to whether saltwater seepage was temporary and precluded summary judgment. 671 S.W.2d at 868-69. Subsequently, in *Schneider*, the Texas supreme court clarified that "jurors should be asked to settle the question 'of the character of the nuisance as temporary or permanent' only to the extent there is a dispute regarding what interference has occurred or whether it is likely to continue." 147 S.W.2d at 281.

Because the injury here was temporary, GWP could recover damages for the two years prior to filing suit. *See Bayouth*, 671 S.W.2d at 868. As a result, GWP's claims were not barred by limitations, and the trial court did not err in denying ACCI's motion for directed verdict.

### LEGAL SUFFICIENCY

In conjunction with its first issue, ACCI further argues that the evidence was legally insufficient to support the jury's answers to Question No. 1 and Question No. 2. These questions restricted the jury's inquiry to the time period "from on or about September 2003 through

October 2003."[3] ACCI argues that there is "no evidence that ACCI entered the premises [and] took any action to invade or interfere with the premise[s] in that time frame," and "all the evidence conclusively establishes that any entry, invasion, or interference occurred in the year 2000."

In analyzing a legal sufficiency challenge, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802 at 827 (Tex. 2005). We must review the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable fact-finder could and disregarding any contrary evidence unless a reasonable fact-finder could not. *Id*. at 819-21, 827. We may sustain a no-evidence or legal sufficiency challenge only when the record discloses one of the following situations:

> (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the only evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence conclusively establishes the opposite of a vital fact.

*Id*. at 810 (quoting Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362-63 (1960)).

In the present case, the jury was instructed that a trespass could occur when a party legally entered the plaintiff's premises with permission, but exceeded or passed beyond the bounds of any right which was legally granted. The jury was further instructed that a trespass

---

[3]Question No. 1 and Question No. 2 provide:

Did Defendant, ACCI Forwarding, Inc. commit a trespass from on or about September 2003 through October 2003 on the premises located at 4445 Pan American Blvd., Laredo, Texas 78045 owned by Gonzalez Warehouse Partnership, causing Plaintiff's damages?

….

Did Defendant, ACCI Forwarding, Inc. create a nuisance from on or about September 2003 through October 2003 by failing to remove the chemicals from the premises located at 4445 Pan American Blvd., Laredo, Texas 78045, thereby causing Plaintiff to incur damages?

could occur when a party failed to remove a thing from the plaintiff's property when under a duty to do so. The jury was also instructed that a nuisance could occur when a party's conduct resulted in a condition that substantially interfered with the plaintiff's private use and enjoyment of the land, and the nuisance caused damage to the land.

Viewed in the light most favorable to the verdict, the evidence showed the chemicals remained on GWP's land until GWP made arrangements to have them removed in late September and early October of 2003. The removal dates were established by witness testimony and by written documents, including invoices from the companies hired to remove the chemicals. We conclude the evidence was legally sufficient to support the jury's answers to Question No. 1 and Question No. 2.

### IMPUTING LIABILITY TO ACCI'S OFFICERS AND DIRECTORS

In its third issue, ACCI argues the trial court erred in imputing liability to De La Miyar and Rullan under the parties' stipulation agreement. This issue involves two provisions of the Texas Tax Code, Section 171.252 and Section 171.255. The first provision, Section 171.252, provides that if the corporate privileges of a corporation are forfeited under this subchapter, the corporation shall be denied the right to sue or defend in a court of this state; and each director or officer of the corporation is liable for a debt of the corporation as provided by Section 171.255 of this code. TEX. TAX. CODE ANN. § 171.252 (West 2008). The second provision, Section 171.255, provides, in relevant part,

> (a) If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this

chapter on the corporation that becomes due and payable after the date of the forfeiture.

*Id*. § 171.255.

Prior to trial, the parties agreed to stipulated findings of fact and conclusions of law. These stipulations provided that ACCI had forfeited its corporate charter and privileges as of February 2, 1993; that the corporate charter had not been reinstated because ACCI failed to satisfy its franchise tax obligations; that De La Miyar and Rullan as directors or officers of ACCI were personally liable for each debt incurred while the corporate charter was forfeited; and that if ACCI was held liable in this suit, any resulting judgment would be considered a corporate debt and was considered to have accrued at the time the act giving rise to the liability was committed. The judgment recites that it is based on both the parties' stipulated findings of fact and conclusions of law and the jury's verdict.

ACCI first argues the law precludes any personal liability against De La Miyar and Rullan because the jury found in favor of GWP on two tort claims, nuisance and trespass, and the tax code imposes liability on officers and directors for a debt, but not for tort liability. *See id*. § 171.255; *Williams v. Adams*, 74 S.W.3d 437, 442-43 (Tex. App.—Corpus Christi 2002, pet. denied) (holding section 171.255 of the Texas Tax Code was inapplicable to a negligence claim). According to ACCI, the trial court erred in rendering judgment against De La Miyar and Rullan because the judgment is for tort liability. Nevertheless, the record shows the parties agreed in their stipulations that "any resulting judgment" in this case "is considered a corporate debt." Thus, in light of the stipulations, the trial court did not err in imputing liability to De La Miyar and Rullan.

ACCI next argues liability could not have been imputed to De La Miyar and Rullan because they were not expressly mentioned in the jury charge. To support this argument, De La

Miyar and Rullan emphasize that a judgment must conform to the verdict. *See* TEX. R. CIV. P. 301*; Perez v. Weingarten Realty Investors*, 881 S.W.2d 490, 493-94 (Tex. App.—San Antonio 1994, writ denied). Here, however, the judgment recites it is based on both the parties' stipulations and the jury's verdict. Further, the parties stipulated that any resulting judgment would be considered a corporate debt, and that De La Miyar and Rullan were personally liable for each debt incurred while the corporate charter was forfeited. We, therefore, conclude the trial court did not err in imputing liability to De La Miyar and Rullan.

## ORDERS VACATING PRIOR JUDGMENTS

In its fourth issue, ACCI complains "the trial court's characterization of its September 22, 2009[,] and November 9, 2009[,] orders as a Rule 316 judgment *nunc pro tunc* is error." Both of these orders state that they vacate the September 1, 2009, judgments signed by the visiting judge.

Texas Rule of Civil Procedure 329b(d) provides that a trial court has plenary power for thirty days after a judgment is signed to grant a new trial or to vacate, modify, correct, or reform the judgment. TEX. R. CIV. P. 329b(d). Thus, the trial court is authorized to correct any errors, whether judicial or clerical, in a judgment before it loses plenary power. *See America's Favorite Chicken Co. v. Galvan*, 897 S.W.2d 874, 876 (Tex. App.—San Antonio 1995, writ denied). Texas Rule of Civil Procedure 316 authorizes the trial court to correct clerical errors in a judgment after it loses plenary power. TEX. R. CIV. P. 316. Thus, after the trial court loses plenary power, its authority is limited to correcting clerical errors in a judgment. *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986).

Contrary to ACCI's assertions, the record here does not show the trial court characterized the complained-of orders as "a Rule 316 judgment *nunc pro tunc*." Nowhere in the orders does it state that the trial court was granting relief under Rule 316. In addition, the September 22, 2009,

order was signed while the trial court still had plenary power. Thus, the trial court's authority to change the judgment was not limited to correcting clerical errors in the judgment, but also included the authority to make substantive changes to the judgment. As even ACCI acknowledges in its brief, "whether the changes are characterized as clerical or judicial errors is irrelevant because the [trial] court still had plenary power to correct the judgment as it saw fit." We find no error in the trial court's characterization of its September 22, 2009, order.[4]

## COGNIZABILITY OF NUISANCE CLAIM

In its second issue, ACCI argues the trial court erred in denying its motion for JNOV because GWP's claims were not cognizable under a nuisance theory. We need not address this issue, however, because it is unnecessary to the final disposition of this appeal. *See* TEX. R. APP. P. 47.1 (requiring appellate courts to hand down opinions that are as brief as practicable, but that address every issue raised and necessary to final disposition of the appeal).

In cases in which the judgment rests on multiple theories of recovery, an appellate court need not address all causes of action if any one theory is valid. *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 634 (Tex. App.—Waco 2000, pet. denied). Here, the jury found in favor of ACCI based on both its trespass and nuisance causes of action. Thus, even if ACCI were to prevail on its second issue and we were to reverse the jury's nuisance finding, we would still be required to affirm the trial court's judgment based on the jury's trespass finding. *See id.* at 634, 639-40 (declining to address issues involving jury's breach of contract findings when judgment was upheld under jury's DTPA findings).

---

[4]The September 22, 2009, order was effective in setting aside the September 1, 2009, judgments. Accordingly, we need not address ACCI's parallel arguments about the November 9, 2009, order, which purports to grant the same relief as the September 22, 2009, order.

## CONCLUSION

We affirm the trial court's judgment.

Karen Angelini, Justice